UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LEROY NATHANIEL MOULTRIE,                          :

                Plaintiff,              :   **REPORT AND RECOMMENDATION**

    -v.-                                              :   04 Civ. 6887 (RCC) (GWG)

JOHN E. POTTER, Postmaster General,                :
United States Postal Service,
                                                :
                Defendant.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Leroy Nathaniel Moultrie brings this action pro se against his employer, John E. Potter, the Postmaster General of the United States Postal Service ("USPS"). The operative complaint – Moultrie's second amended complaint – purports to raise claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"); and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"). Moultrie alleges various discriminatory acts occurring between 1987 and 2005. Defendant Potter now moves to dismiss the complaint in part pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for partial summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the defendant's motion for partial summary judgment should be granted.

I. FACTUAL BACKGROUND

    A. EEOC Complaints

      On January 21, 2004, Moultrie completed a pre-complaint counseling form alleging discrimination on the basis of "race, sex, age, retaliation, [and] physical disability." See PS

1

Form 2564-A, Information for Pre-Complaint Counseling, dated Jan. 30, 2004 (reproduced as Ex. A to Declaration of Mitchell Sturman, dated Dec. 12, 2005 (Docket #23) ("Sturman Decl.")) ("Counseling Form"), at 1. The USPS construed this complaint as alleging that (1) on December 9, 2003, Moultrie was not provided with the proper form to get reimbursed for his out-of-pocket expenses; (2) on December 10, 2003, he submitted a Form CA-7 to the injury compensation office and was not told if he qualified for an award; and (3) on January 16, 2004, he was never given a reason why he was not eligible for retroactive back pay. See PS Form 2570, EEO Dispute Resolution Specialist's (DRS) Inquiry Report, dated Apr. 21, 2004 (attached to Second Amended Complaint, filed Oct. 31, 2005 (Docket #16) ("Sec. Amd. Compl.")) ("DRS Report"), at 28-30.[1]

When counseling did not resolve Moultrie's allegations, he filed a formal complaint – known as a "PS Form 2565" – alleging discrimination based on race, sex, age, and disability "from 1987 through 2004." See EEO Complaint of Discrimination in the Postal Service, and attached pages 1-106, dated Apr. 3, 2004 (reproduced in Ex. B to Sturman Decl.) ("EEO Complaint").[2] In a handwritten statement attached to this form, Moultrie restated his allegations of discrimination, see EEO Complaint, attached pages at 6-19. Moultrie also included claims of discrimination and mistreatment dating back to 1987. For example, he claimed that on May 28, 1999, "MDO Margie J. Wood said to me . . . that I was [too] old for my mail handler[']s job."

---

[1] The Court has pencilled in page numbers in the upper-right-hand corner of the pages following the standard complaint form, beginning on page 4, to substitute for multiple and incomplete numbering methods.

[2] The Court has added numbers to the pages that follow the standard complaint form itself.

See EEO Complaint, attached pages at 20.

On April 14, 2004, the USPS dismissed Moultrie's first three claims for failure to state a claim, and dismissed his fourth complaint in its entirety for failure to comply with applicable time limitations. See Dismissal of Complaint, dated Apr. 14, 2004 (attached as Ex. C to Sturman Decl.) ("USPS Dismissal"), at 1-3 (citing 29 C.F.R. § 1614.107(a)(1) and (2)).

With regard to the first three claims, the USPS stated that "[a] review of official injury compensation records reveal [sic] that you have filed three (3) claims with the US Department of Labor (USDOL), Office of Workers Compensation Programs (OWCP)," and that "you are currently on the Periodic Rolls of the US DOL/OWCP for an injury claim dated December 01, 1996 and filed on June 14, 1999 receiving full compensation and benefits." See USPS Dismissal at 2. The USPS noted that "all claims and matters relating to pay and benefits, while on the periodic rolls, are more proper before the US DOL/OWCP not US Postal Service [sic]. This Office nor the US Postal Service has no [sic] jurisdiction over matters regarding on the job injuries." See id.

With regard to the fourth claim, the USPS stated that the "applicable time limit for contacting an EEO Counselor is 45 days from the date of the matter alleged to have been discriminatory unless there has been a sufficient showing upon which to extend time limits." See id. (citation omitted). Because Moultrie had first contacted an EEO Counselor on January 21, 2004, and because his complaint "was not accompanied by any request or evidence that the 45-day limit should be extended," the USPS dismissed the allegations in the fourth claim as time-barred. See id. at 2-3.

3

B. The Instant Motion

Moultrie filed his original complaint in this Court on August 25, 2004. See Complaint, filed Aug. 25, 2004 (Docket #1). He filed an amended complaint on June 30, 2005. See Amended Complaint, filed June 30, 2005 (Docket #12). He filed a second amended complaint on Oct. 31, 2005. See Sec. Amd. Compl. This complaint purports to raise claims under Title VII, the ADEA, and the ADA, and alleges that the discriminatory acts occurred from "1987 through 2005." See Sec. Amd. Compl. at 3. Moultrie also attaches to the complaint a 42-page handwritten statement – which is marked as paragraph 8 of the complaint and includes various documents related to his employment – that is apparently meant to detail specific incidents of discrimination. All of these incidents are alleged to have occurred before December 2003, with the following exceptions: 1) following letters he sent in 2002 and 2003, the USPS refused "to inform [him] . . . of health benefits other than lower back injury" until March 17, 2005, see Sec. Amd. Compl. at 11-12; 2) the USPS failed to promote him, failed to "accommodate [his] disability," and retaliated against him from 1987 through 2005, see id. at 16-17; and 3) on April 19, 2004, the USPS "refused to reissue [him] a new ID badge," see id. at 18.[3]

On December 14, 2005, the defendant filed the instant motion to dismiss the second amended complaint in part, or in the alternative, for partial summary judgment. See Notice of Motion, filed Dec. 14, 2005 (Docket #19); Notice to Pro Se Litigant Opposing Partial Motion to Dismiss or, in the Alternative, for Summary Judgment, filed Dec. 14, 2005 (Docket #20) ("Def. 56.2 Statement"); Defendant John E. Potter's Local Rule 56.1 Statement, filed Dec. 14, 2005

---

[3]It is not clear whether Moultrie re-alleges the claims attributed to him in the DRS Report, though he does appear at least to re-state his claim regarding out-of-pocket expenses, see Sec. Amd. Compl. at 17.

(Docket #21) ("Def. 56.1 Statement"); Memorandum of Law in Support of Defendant's Partial Motion to Dismiss the Second Amended Complaint, or in the Alternative, for Partial Summary Judgment, filed Dec. 14, 2005 (Docket #22) ("Def. Mem."); Sturman Decl.

Moultrie responded on March 2, 2006, with a packet of approximately 70 pages, most of which were the same documents that he had submitted previously in his various complaints to the Equal Employment Opportunity Commission ("EEOC") and to this Court. A copy of Moultrie's opposition papers is reproduced as an attachment to the defendant's reply brief. See Opposition Papers, undated ("Pl. Opp.") (reproduced as Ex. 1 to Reply Memorandum of Law in Further Support of Defendant's Partial Motion to Dismiss the Second Amended Complaint, or, in the Alternative for Partial Summary Judgment, dated Mar. 24, 2006 (Docket #26) ("Def. Reply Mem.")), at 1-74.

Because this matter is most simply disposed of in the context of the defendant's motion for partial summary judgment, we do not reach the motion to dismiss.

## II. DISCUSSION

### A. Summary Judgment Standard and the Parties' Submissions

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

5

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

In this case, the defendant submitted a statement of undisputed material facts as required by Local Rule 56.1. See Def. 56.1 Statement. That rule provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically

6

controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." See Local Civil Rule 56.1(c). Moultrie was served with the notice required by Local Civil Rule 56.2, which gave him specific instructions on how to respond properly to the defendant's motion. See Def. 56.2 Statement. Furthermore, the Court itself issued an order notifying Moultrie that he must respond separately to each allegation in the defendant's statement of undisputed material facts and that any disputed fact must be accompanied by reference to evidence. See Order, dated Jan. 10, 2006 (Docket #24), at 1 ("plaintiff is reminded that if he disputes any of the facts listed in the [defendant's 56.1 Statement], he must submit a statement that contains a correspondingly numbered paragraph responding to each numbered paragraph in Government's statement. Each paragraph in his statement must be followed by a citation to admissible evidence.") (emphasis in original).

Despite these warnings, Moultrie submitted a statement that, while purporting to address the defendant's Statement, does not actually controvert any of the factual statements contained therein. See Pl. Opp. at 1-74. The response consists almost entirely of copies of documents Moultrie previously submitted in support of his claims of discrimination. The only exceptions, discussed further below, relate to matters that are either irrelevant or unsubstantiated. Thus, the material facts set forth by the defendant are uncontested and are accepted as true. See Local Civil Rule 56.1(c).

B. Analysis

As an initial matter, a federal employee such as Moultrie may not bring claims against the federal government under the ADA. See 42 U.S.C. § 12111(5)(B)(i); Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998). Accordingly, we construe Moultrie's ADA claim to be alleging a

violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq. See Rivera, 157 F.3d at 103.

1. Claims under Title VII, ADEA, and Rehabilitation Act

Under Title VII and the applicable EEOC regulations, a federal employee who claims to have been subjected to discrimination on the basis of his or her sex must timely exhaust all available administrative remedies prior to filing suit in federal court. See Brown v. General Services Admin., 425 U.S. 820, 832 (1976); see also Briones v. Runyon, 101 F.3d 287, 289 (2d Cir. 1996); 29 C.F.R. §§ 1614.105-1614.110. Specifically, within 45 days of the alleged discriminatory act, the employee must consult with an EEO counselor. 29 C.F.R. § 1614.105(a). The counselor must inform the employee of his or her rights and responsibilities and, if resolution is not possible within 30 days, inform the employee of his or her right to file a discrimination complaint with the agency. Id. § 1614.105(b)-(d). The employee must timely file such a complaint, id. § 1614.106(b), and the agency has 180 days to investigate the claims, id. §§ 1614.106(e)(2), 1614.108(e). The employee may file a civil action in an appropriate United States District Court only after receiving notice of a final administrative decision or after 180 days from the date he or she filed the administrative complaint if no final administrative decision has been reached. See id. §§ 1614.110, 1614.407(a)-(b). If the employee bringing such an action did not originally seek EEOC counseling within 45 days, the claim may be dismissed. See, e.g., Boos v. Runyon, 201 F.3d 178, 181 (2d Cir. 2000) (postal employee's discrimination claim barred where plaintiff failed to seek EEO counseling within 45 days of alleged discriminatory incidents); Cherry v. Potter, 2005 WL 1085119, at *3 (S.D.N.Y. May 5, 2005) (postal worker's discrimination claim time-barred where she did not contact an EEO counselor

until "well over" 45 days after the alleged discriminatory events); Torres v. U.S. Dep't of Veterans Affairs, 2004 WL 691237, at *3-*5 (S.D.N.Y. Mar. 31, 2004) (employment discrimination claims dismissed for failure to exhaust administrative remedies where plaintiff failed to allege that she sought counseling within 45 days of her termination).

The same time limits apply to claims brought under the ADEA, see Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001) ("Prior to bringing suit under either Title VII or the ADEA, a federal government employee must timely 'exhaust the administrative remedies at his disposal.'") (citing Downey v. Runyon, 160 F.3d 139, 145 (2d Cir. 1998)), as well as to claims brought under the Rehabilitation Act, see Bruce v. United States Dep't of Justice, 314 F.3d 71, 74 (2d Cir. 2002) ("An employee suing the federal government under the Rehabilitation Act must exhaust certain administrative remedies before initiating a lawsuit in federal court."); Guice-Mills v. Brown, 882 F. Supp. 1427, 1429 (S.D.N.Y. 1995) ("Suits against federal agencies under Title VII, the ADEA, and the Rehabilitation Act are governed by . . . 29 C.F.R. §§ 1614.101 et seq.").[4]

---

[4]The ADEA permits a federal employee to elect to file suit directly in federal district court rather than proceed through the EEOC administrative process. See, e.g., Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991) (citing 29 U.S.C. § 633a(b)-(d)). "However, if an aggrieved employee chooses the administrative process, he becomes obliged to timely exhaust administrative remedies before he may pursue an ADEA claim in federal court." Avillan v. Potter, 2002 WL 252479, at *2 (S.D.N.Y. Feb. 21, 2002) (citing Baber v. Runyon, 1998 WL 912065, at *3 (S.D.N.Y. Dec. 30, 1998) (citing Wrenn v. Secretary, Dep't of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990))). Because Moultrie chose to pursue his ADEA claim through the administrative process, we need only consider whether he timely complied with that process.

The Government asserts that Moultrie first sought EEO counseling for claims of discrimination and retaliation on January 21, 2004. See Def. 56.1 Statement ¶ 1. Moultrie disputes this, and contends that he in fact submitted his request for counseling on January 16, 2004, although it was not received until January 21, 2004. See Pl. Opp. at 7. This disagreement is irrelevant to the instant motion, however, because Moultrie does not allege that any discriminatory acts occurred between his asserted cutoff date (December 2, 2003, or 45 days before January 16, 2004) and the Government's asserted cutoff date (December 7, 2003, or 45 days before January 21, 2004). Because Moultrie did not contact an EEO counselor until January 16, 2004, under his own version of the facts, all claims based on incidents occurring before December 2, 2003, are time-barred.

2. Regulatory Extension, Equitable Tolling and Estoppel

There is no evidence in the record to suggest that Moultrie's failure to contact an EEO counselor in a timely fashion should be excused. The regulatory grounds for an extension of the time period are set forth at 29 C.F.R. § 1614.105(a)(2), which provides:

> The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or Commission.

29 C.F.R. § 1614.105(a)(2).

Moultrie does not seek to excuse his lateness under this regulation. Nor do his papers reflect any grounds for doing so. Moultrie apparently was aware of the time limits, as he himself submitted to the Court a copy of EEO Publication 133, which explains the 45-day time limit for

contacting an EEO counselor.  See Pl. Opp. at 5-6.  Indeed, he quotes the relevant language in his own papers.  See Pl. Opp. at 8.  Similarly, because the discriminatory acts alleged by Moultrie were directed at him, there is no reason why he would not have known that the alleged discriminatory actions occurred.  Finally, there is no indication of circumstances beyond Moultrie's control that prevented him from contacting a counselor within the time limits.

We next consider whether Moultrie could benefit from any equitable doctrines such as "waiver, estoppel, and equitable tolling," Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), which are available to toll administrative filing deadlines.  See, e.g., Boos, 201 F.3d at 181.  The doctrine of equitable estoppel bars a defendant from raising a statute of limitations defense where the plaintiff shows that the defendant's affirmative misconduct caused the plaintiff to bring suit in a defective manner.  See Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 301 F. Supp. 2d 259, 263-64 (S.D.N.Y. 2004); Avillan, 2002 WL 252479, at *3; see also Long v. Frank, 22 F.3d 54, 59 (2d Cir. 1994) (requiring affirmative misconduct aimed at causing plaintiff to forgo legal rights), cert. denied, 513 U.S. 1128 (1995); Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985) ("equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit").

Nothing in the record, however, indicates that the act or statement of anyone associated with the USPS caused Moultrie to fail to timely exhaust his administrative remedies.  See Cherry, 2005 WL 1085119, at *3 (equitable estoppel does not apply where "there is no evidence in the record indicating that plaintiff filed a defective pleading or that defendant acted in any way to induce plaintiff to delay seeking EEO counseling") (citing Judge v. Henderson, 172 F. Supp.

11

2d 410, 414 (S.D.N.Y. 2001)). Moultrie asserts that he sent multiple letters regarding health benefits to the Office of Workers' Compensation – on September 25, 2002, February 13, 2003, and July 8, 2003 – and that he only received a reply on March 17, 2005, see Pl. Opp. at 21. But this contention does not reflect that any affirmative misconduct on the USPS's part prevented him from contacting an EEO counselor. Cf. Cherry, 2005 WL 1085119, at *3-*4 (no tolling of 45-day period where there was no evidence that Post Office's internal investigation delayed plaintiff's filing of a complaint).

Nor could he benefit from the application of equitable tolling, as such tolling "is available 'only when the plaintiff's failure to meet a deadline is the result of someone else's error.'" Cherry, 2005 WL 1085119, at *3 (quoting German v. Pena, 88 F. Supp. 2d 216, 219-22 (S.D.N.Y. 2000)). The burden of demonstrating that equitable tolling applies lies with the plaintiff. Judge, 172 F. Supp. 2d at 414. It applies only in "rare and exceptional circumstance[s]." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.) (citations and internal quotation marks omitted), cert. denied, 531 U.S. 840 (2000). Moultrie contends that he requested "an extension of [the] 45-day period from the EEO" and "was not given [a] . . . 45-day extension form" when he made a complaint in 1987. See Pl. Opp. at 42, 46. However, an unanswered request for an extension does not show that his failure to meet the deadline in the first place was the result of anyone else's error. Notably, Moultrie does not even explain why he needed an extension. Thus it is impossible to determine whether the request was legitimate when it was made in 1987. Nor does he explain for which particular complaint or complaints he sought the extension. In any event, even if there had been some reason to toll the limitations period in 1987, nothing in the record could justify tolling the administrative limitations period indefinitely.

12

See Harrison v. Potter, 323 F. Supp. 2d 593, 602 (S.D.N.Y. 2004) (doctrine of equitable tolling requires that party have acted with "reasonable diligence"); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (party seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of [the] filing").

In sum, Moultrie failed to exhaust available administrative remedies prior to filing suit with respect to any discrimination claims based on incidents occurring before December 2, 2003. Because no doctrine excuses him from this failure, these claims must be dismissed.

## Conclusion

For the foregoing reasons, the defendant's motion for partial summary judgment should be granted with respect to incidents occurring before December 2, 2003.

## **PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard C. Casey and to the undersigned at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Casey. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: May 31, 2006
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　GABRIEL W. GORENSTEIN
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Copies sent to:

Leroy Nathaniel Moultrie
165 St. Marks Place
Apartment 6B
Staten Island, New York 10301

Wendy H. Waszmer
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3d Floor
New York, New York 10007

Hon. Richard C. Casey
United States District Judge

Dated: May 31, 2006
New York, New York

*[signature]*
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Leroy Nathaniel Moultrie
165 St. Marks Place
Apartment 6B
Staten Island, New York 10301

Wendy H. Waszmer
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3d Floor
New York, New York 10007

Hon. Richard C. Casey
United States District Judge